20-1747 from the District of North Dakota. JoAnn Chase et al. v. Andeavor Logistics, L.P. et al. Very good. Mr. Steed. Good morning and may it please the court. Is the audio working for you? Are you hearing everybody? I think so. If I'm not hearing them, I can't tell. Well, if you're not hearing, let us know so we can have a sound argument today. Please proceed. Jason Steed, on behalf of the individual landowners, this case is about whether Indian landowners can sue for trespass to protect their land without having to rely on the government to do it for them. Before getting to the two sort of key regulatory provisions that are at issue in this case, section 169.410 and 169.413, I want to back up and provide a little more context for the part 169. And 169.1 addresses the purpose of this regulatory scheme. And the whole scheme is about granting rights of way across Indian land. And the last sentence of section 169.1 says that the purpose of this scheme is to, quote, defer to the maximum extent possible to Indian landowner regarding their Indian land. That purpose of this scheme is crucial to interpreting how these regulations work. The purpose is to give the Indian landowner as much control over their land as possible. And section 169.2 ‑‑ I assume, counsel, I assume the tribe as owners are included in that as either the tribe or the individual Indian. So the tribe's control over its ownership interest in the land and the individual Indian's control interest in its ownership over the land are both addressed. And the purpose of the scheme is to defer to the landowner's control over their land regardless of whether it's a tribe or an individual Indian. Because both the tribe and individual Indians own interests in Indian land. Well, counsel, if I can focus you on what interests me most, at least, is simply this. I understand all those big purposes. But there are many times that people have very big constitutional rights, but they must exhaust administrative remedies. Why isn't this a case where you must exhaust administrative remedies? The simple answer is there is no administrative remedy to exhaust. The other side has admitted that the BIA is not empowered. There's nothing in the statute or the regulatory scheme that empowers the BIA to award damages or to award injunctive relief or to give us any of the relief that we're seeking for the trespass on our land. Wait, counsel, let me stop you there. Because the agency action that's on administrative appeal purports to grant remedies. Now, subject to judicial review, but that's not a lack of remedial authority. Well, the decision by the BIA does purport to assess some kind of penalty or pass rent. They refer to it as a penalty in some instances, and they refer to it as a sort of pass rent, but that's the nature of the penalty. It does purport to do that. We don't know where in the regulatory scheme the BIA is empowered to do that. I don't believe that's for us to decide. Well, it is for the court to decide whether or not there's an administrative remedy available to us. No, no, no. That's not in our job description. That's in the job description of the court of appeals that may ultimately review any final action the agency takes. No, your honor, with respect, we're here because we've been dismissed to go pursue some administrative remedy. And so the question right now before the court is whether there's any remedy for us to pursue. The BIA's opinion, the BIA's trespass determination, it purports to impose some kind of penalty. But it also, at the same time, the BIA says that its decision does not include any damages or injunctive relief that might be available under common law. So the BIA itself is acknowledging that the relief we're seeking is not being provided by the BIA's trespass determination. Even if that is true, counsel, do you still have to exhaust the administrative remedy that apparently has now been exhausted? In other words, can both of those things be true, that you have to exhaust and the BIA can't give you the full relief? Not in this case, because that's the whole point of the post-committee decision by the Supreme Court, that we don't have to wait, even if there is an administrative remedy of some kind, we don't have to wait for the BIA to do whatever it is it can do. We have our own right of action to protect our land. And the post-committee decision makes that pretty clear. We don't have to wait on the, I think the quote is something like the zeal of a government attorney. The BIA didn't take any action for seven years. They took action, the timing of it suggests that after the district court dismissed our case, the BIA decided to try to do something. But for seven years, the BIA didn't do anything. And we don't have to wait for the BIA to do anything. Does the post-committee case address at all exhaustion? Is the word exhaustion or anything like it, even in the opinion? No, because it's not, it's saying, what post-committee is saying is that there, even if there is something that could be exhausted, we don't have to do that. No, it doesn't even use the word, counsel, now go slowly with me. Just textually, it doesn't use the word exhaustion or a concept like exhaustion, right? I mean, I haven't searched it for the word exhaustion, so I don't know if the opinion used the word exhaustion. Well, I didn't see any quotations from it. And the other side, pardon me, the other side plainly said it doesn't have the word exhaustion or exhaust or any concept like that in it. And I didn't see any quotations that said, and I don't think my clerk found any, but I wouldn't swear to that. So tell me again how that affects an exhaustion issue. The question here is whether or not there's any remedy to exhaust. So the court can look at the statute and the regulatory scheme to see if there's any administrative, there's nothing provided for any kind of administrative procedure or remedy for us to exhaust. The post-committee case is about whether we have to wait for the government to take action on our behalf by filing suit, which is in this regulatory scheme. But post-committee says we don't have to wait for the government to file suit on our behalf either. Even though the government is empowered to file suit on our behalf, we can file suit on our own behalf. And you did. And you did. Why aren't you arguing for a stay instead of dismissal in the alternative? A stay for what? There's nothing. For final agency action and any judicial review of that action. But that's, again, with respect, that's missing the point. We don't have to wait for any administrative action. No, you want to go back to your primary argument. My question was, and I'd like an answer, why did you not argue for a stay in the alternative? Because we didn't have any, we don't know what we were even staying anything for. The BIA took this action on its own. Nobody asked the BIA to do this. At the time that we were asserting our cause of action and then appealing the dismissal of that cause of action, there was nothing, we didn't know what the BIA was doing. We had no reason to think that there was something to stay the action for the BIA to do. Everything the BIA has done, BIA has done on its own. It initiated all of this without briefing from the parties. Nobody asked the BIA to do this. When it issued its decision, its first assessment of 187 million, we didn't know where that came from. Council, there's a lot of primary jurisdiction situations just like that. Nobody asked the agency to do anything, but the law, the administrative law required exhaustion nonetheless. But that's exactly what we're saying, the administrative law doesn't require that. That's your argument, you've got no direct authority for that. You've got a nice statutory, it's not their argument. But lots of things aren't there in black and white that nonetheless get implied, so to speak. Your Honor, I'm not aware of any agency administrative procedure that just exists without anything written to say it exists, and I don't know, I don't know how we... Wait, the procedure is there in 0.410, I guess. Yeah, Council, there has to be a procedure to do what the agency is required to do in a holdover situation. Your Honor, with respect, there isn't one. Section 410 does not provide any... Okay, what if we disagree with you? Case done, we simply affirm? I mean, if you choose to simply affirm on failure to exhaust, then yeah, that would end the case. But again... Well, Council, no, wait, in the case, be careful, was it the motion to dismiss granted without prejudice? Yeah, sorry, I don't mean to... Okay, well, isn't that about the same as... Now, I know there's a filing fee and some other technicalities, but is it a motion dismissed when it's granted without prejudice about the same as a stay? I mean, in practical effect, it's essentially similar to that, yes. Yeah, I think so too. Okay, thank you very much, and can you see the clock? I just happened to think about that. Yeah, I can see that. Great. Your Honor, I guess... Sorry, did someone say something? Council, what is the effect of the recent filings regarding the BIA decision? Does that affect your argument here today, or maybe more directly, does it affect your options? I mean, if we were going to challenge what the BIA has done, then we could amend our complaint to add that, and that would expand what our suit is actually about. But again, our position is that we don't need to challenge what the BIA has done, and the only way the BIA could enforce what it's done is for it to file suit on our behalf in another lawsuit. Okay. Well, what's your counsel... You say you want to amend... You might amend the complaint on remand to challenge the ongoing agency action, which is obviously a collateral attack on an ongoing administrative proceeding. What's your best authority for that? Well, it's not an ongoing proceeding now at this point. The February 9th... Wait, it's on administrative appeal. It's on administrative appeal. No, it's not, Your Honor. The February 9th notice or order from the BIA dismissed all the previous assistant secretary's action just before the change in administrations to affirm the December 15th decision. So there's nothing more happening at the BIA. There's a December 15th decision that was affirmed, and everything was dismissed without any full briefing, by the way. Whatever administrative proceeding was happening didn't even fully happen. Nobody got to fully brief anything before the previous administration just affirmed the decision that So now there's judicial review possible under Section... What is it? Seven of the APA. Yes. If the oil company wants to challenge what the BIA did, they could sue to appeal that decision in federal court, or we could amend our complaint to... If we wanted to challenge it, we could amend our complaint to challenge that decision at this point also. But that's separate from whether we have our own right of action for trespass. Of course it is. Exhaustion is not inconsistent with that. The agency has said there's a common law claim here. Yes, and that's exactly... We're talking timing. Right. And we're saying there's no basis for us to have to wait for the BIA to do anything, whether it's administrative or filing suit on our own behalf. The case law is pretty clear that we have a common law right of action under the Oneida cases and the post-committee. We can sue for trespass without having to wait seven years for the BIA to do something. My time is up. If there are no further questions, I'll reserve the rest of my time for rebuttal. Very good. I hope you get your utilities back, and I'm glad you were able to join us at least by audio. Thank you. Mr. Ward? May it please the court. Jeff Webb on behalf of Appellees. The court should affirm the judgment below, and it can do so on multiple grounds, including the exhaustion ground that this court has already discussed. This is in particular in light of the BIA's extensive and orderly administrative system, which is in place and that the BIA is carrying out in furtherance of its congressional authority delegated to the Secretary of the Interior, and particularly in light of the BIA's role as trustee on behalf of all beneficiaries. If I could, I'd like to start with this exhaustion issue and also touch upon the subject matter jurisdiction issue and required parties. I think both of those also provide independent bases for this court to affirm, in particular subject matter jurisdiction, which has previously been addressed. Counsel, wait a minute. I want to start you with a specific question on exhaustion. The district court analyzed it as both statutory and inherent judicial power to invoke exhaustion and explained why, in the court's view, we needed a final answer from the agency in order to know factual and other aspects of what would proceed in the common law action. The agency now has issued a final order. It has recognized there is a common law action. Seems to me that the longer with us. Your Honor, with respect to that, there have, I mean, there has been an agency decision. There is final agency action with respect to some issues for purposes of APA reviews. Specifically, the court found that it was going to, I'm sorry, the BIA found that it was going to treat the holdover as a trespass. It assessed damages of nearly $4 million in an order to remain in place. So, with respect to those issues, final agency action has been taken, which to the extent the party wants to challenge it, they would do so under 5 U.S.C. 704 through an APA review. There are other decisions that have not yet been addressed, though. Specifically, 169. You can, you know, you can argue all kinds of collateral things. Address my specific question. The agency has recognized the common law, that a common law damage claim will survive whatever final action the agency takes on all these issues. Why isn't it appropriate for the, for a federal common law court now to say we need not wait longer for that question? Both the regulations and in this decision by the Assistant Secretary and Regional Director, that action is reserved to the BIA. They can pursue the BIA. Wait, wait, what's reserved? The common law action? The action on behalf. Absolutely not. Absolutely not. You've got no judicial authority for that. 169.410 specifically says that one of the determinations the BIA must make in its trustee capacity is whether or not it is going to bring an action to pursue, to pursue an action and remedies on behalf of all the beneficiaries. And that action. Wait, give me this. Give me your best Supreme Court case for the proposition that that, that that regulation conveys exclusive authority to bring the common law federal action in the hands of the agency. I've read that. I've read what you're citing. Don't give me the statute breaks. Give me, give me a Supreme Court case on, on exclusive jurisdiction to enforce a common law action. I'm not aware of one as to 169.410, which was promulgated as recently as 2016. Anywhere, anywhere. Go back to the 19th century. Just give me a Supreme Court case that is, that is recognized that Congress can grant an agency exclusive, exclusive authority to enforce a private party's common law cause of action. Your Honor, on that particular point, I am not aware of a case, but I guess I can, I can, I can bet you, um, you know, a number of hamburgers that there isn't one. And I guess my point though, is under the regulatory scheme and these discretionary agency actions with respect to the enforcement of rights of way on Indian lands has been delegated by Congress to the BIA and the BIA. There's no dispute is the trustee on behalf of all these beneficiaries. The key word here, I think is exclusively. And if just to read 410, and by the way, I generally agree if you're reading of it, but if you just read 410, it says may M a Y boy, that sounds the opposite of exclusive. Well, and the may comes in. They may or may not decide based on the best interest of all the collective beneficiaries, whether to bring that action. I think it's important that there are two or three maize in there. It's not that easy. Counsel, you know, about every sentence has a may, at least the sentences I'm looking at. Yeah, I got the whole thing. You know, may is the key verb to this thing. And may sounds the opposite of exclusive. And, and that may is there because of the discretion that the BIA has to act on with respect to these rights away. You know, this, this case is a perfect example of that and provides the sound practical and policy reasons behind the regulation that the BIA has put in place, particularly as it relates to a holdover situation where you're in a renewal process. There's infrastructure that's been in place. There's a number of allotments and tracks and beneficiaries whose interests must be considered in the BIA as grantor of that right away, not the allottees, the grantor of that right away is the BIA. And they have a trustee obligation to all of their beneficiaries, which includes not only these particular allottees, but hundreds of other allottees and the tribe itself. There's been over 130 allottees, as well as the tribe who have consented to the renewal of this right away and want this pipeline to remain. Someone in the BIA is the agency delegated with the authority to make this one decision as to whether or not and how to pursue these remedies. And that regulation specifically provides for that. Okay, I understand your argument, but at least in my state, inverse condemnation, if you understand that term, that may just be a Missouri-ism. Inverse condemnation is a common law action. If the government just messes around and takes your property, you can sell them for taking your property. So if that's what it is, wouldn't have a thing to do with this scheme, would it? There'd still be inverse condemnation some way, somehow, if anybody has any right in the property. But your honor, I think there could potentially be common law claims. First off, those common law claims with respect to allottees and their individual allotments arise under state law, not federal law. There is no federal common law trespass for individual allottees. This court in the Wolfchild case, in the Cashel case, addressed that very issue, that there is no claim arising under federal law. Counsel, in that case though, that was land that was owned outright by the individual landowners, correct? This is still land in trust. Your honor, I believe that the other side has tried to distinguish Wolfchild on that grounds. I do not believe that to be the case. I've not seen that to be the case. I think Wolfchild involved an allotment with restrictions still in place. Other courts have also followed the Oneida. I mean, Oneida decision itself distinguishes between allotments and tribal lands. And a tribal land, which is based on the law. An individual allottee, and there's no dispute here that these allotments are in fact trust allotments, an individual allottee in that situation, both in the Oneida court and this court in Wolfchild found, do not create a common law cause of action arising under federal law. If there was that distinction between the ownership outright and the land being held in a claim? I don't believe so, your honor. I think the courts have been clear that there is no distinction between the type of allotment that is at issue, whether it's restrictive or trust. And also no court has ever distinguished that I'm aware of this issue of whether or not the trust is still in place. Is there a case that says that it isn't an issue? That you're saying there isn't a case that distinguishes it? Is there a case that says there's no difference? I believe Oneida says that and also the Pinkham case we cite to, the Merritt case we cite to. I don't think there's any dispute that those cases involve lands that were in trust. And in the briefing, counsel talks about patent issuing and that there's a distinction there. When the cases refer to patent issuing, patents issue for both trust allotments and restricted allotments. That's how those allotments are issued is through patent. So when cases are referring to issuance of patent, it's not referring to issuance in fee simple. It's issuance of those patents in the first instance. And here, these trust allotments were issued by patent. And as a result, they are no longer tribal lands. There's cases that specifically say once patent issues and that allotment is issued, it is no longer considered tribal land. And as such, under Oneida and Wolfchild, the district court did not have subject matter jurisdiction with respect to a federal common law trespass claim for these particular individual lotties. The court could affirm on those grounds as well. I have a follow-up question on the exhaustion. Can you direct me to what action in particular you're saying that the individual landowners needed to take pursuant to the regulations? What administrative steps did they need to take to exhaust? Yes, Your Honor. There's a couple of things that they have not yet done. First, again, the BIA specifically in its decision where it took these other final agency actions reserved for itself the right to make the decision under 410 whether or not to bring the action on behalf of all lotties, taking into consideration the collective best... What decision are you citing there? I mean, can you give me a record site for that assertion by the agency? Yes, it was the February 14th decision that was recently submitted through a Rule 28J submission that affirms the regional director's December 15th decision and in that affirmed it in its entirety. And in that regional director's decision, it specifically, it recognized that there are additional claims that could possibly be brought, but it reserved to the BIA consistent with 169.410, the right to bring those actions. That is a decision the BIA has not yet made. But does that dump back into your discussion with Judge Benton about exclusive, but they reserved the opportunity to pursue those additional damages, but I don't remember there being language saying exclusively to the BIA and not to the landowner. Let me, two things. So, if you compare 410 to 413, 413, which is the provision that the plaintiffs cite to you for support for their claim, specifically says, in addition to the BIA action on behalf of the allottees, the landowners can bring their own individual suit. That language does not appear here in 410. And so, therefore, for a plain reading of that, it was not intended for that to be here. And there's good reason again for that because of this unique holdover situation. Now, wait, wait, counsel, wait a minute. Judge Kelly asked you where in the decision you just cited as the BIA taking, affirmatively taking your position, your interpretation of the two regs. And you respond with the plain language of the regs. You know, again, we're not, we're trying to get to the, we're trying to get answers to specific questions and nobody wants to do it. I'm sorry, your honor. I thought the question was to the reg and not to the decision. No, she said, I didn't see a reference in the agency decision to an exclusive authority. And you go back to the reg. Sorry, your honor. In the decision, which affirmed the December decision, that the BIA specifically says that 410 applies here, not 413. It specifically said, we understand the argument has been made that 413 applies. 413 does not apply. When it reserved the right, it said the BIA may preserve the right to pursue these actions. It did not provide that the allottees could pursue these actions on their own behalf. So it was silent on that, right, counsel? Yeah, this is sort of a double silence inference. Yeah, I mean it. The reg is silent. The agency just cited the silent reg and therefore the agency was taking an affirmative position. The decision... That's not a very good interpretation of the lower tribunal decisions. It did not make the explicit statement that the landowners cannot bring the claim, but I believe that that is clear from the regulation itself and from the decision. Again, this court could affirm both on exhaustion grounds and on subject matter jurisdiction grounds. And affirmance on subject matter jurisdiction grounds would simply require that this court's binding precedent of Wolfchild and Cashel be applied, which the trial court could have done as well. And there's no need to remand that issue back to the trial court, because it's purely a legal issue without any fact-finding necessary. My time is up, but I'm happy to take any other questions that the court has. Very good. Mr. Esteed, I'll give you a minute for rebuttal. Thank you, Your Honor. I'd like to... I hope I have enough time to try to address both the 410 versus 413 issue and the tribe versus individual issue. On the regulations, you have to understand in the context 410... These 410 and 413 address two different situations. Under the regulations, the oil company has to get the Indian landowner's consent to get this right-of-way renewed. That's section 169.107. They have to get our consent. So 410 addresses the yes scenario, and 413 addresses the no scenario. If we want to give consent, if we want to renew this right-of-way as landowners, then there is a holdover period. If they have not negotiated the renewal of the right-of-way before the right-of-way expires, then there's a holdover period while we're negotiating a renewal of the right-of-way. And that's where 410 kicks in, because we want to say yes. 410 doesn't mention the Indian landowner's right to take action against the oil company, because in that situation, we don't want to take action against the oil company. We want to say yes to renewing the right-of-way. And so what 410 is saying is we need to let the BIA know that there are negotiations going on so that the BIA doesn't take action on our behalf. That's what 410 is about. 413 addresses the no scenario. If we don't want to renew that right-of-way, they need our consent to do it. And if we don't want to renew it, then they are unauthorized. They are on our land without authority. And we can take action under 413. We don't have to wait for the BIA. That's how these regulations work. They are insisting that they're in a holdover situation under 410, because they've gotten the consent of some landowners. But they have to get consent from the majority of landowners. And they don't have it. So we're not... All right, counsel, your time is up. On your other issue, I just have the question of what difference does it make here that the tribe apparently insisted that the pipeline complete the negotiations with the tribe before even starting with the landowners and the BIA, let them get away with it, so to speak? I'm not sure if I understand the question about letting the tribe... The tribe is a minority owner of the tracts that are at issue. The tribe owns a minority interest. I'm just taking this from what's asserted in the briefs. There's an assertion that the tribe insisted that negotiations with the tribe be completed before Tesoro should even talk to the landowners. Now, if that's true, what difference does it make? It doesn't make any difference that I'm aware of. The BIA probably knows that. They were in this loop all the way. I'm not aware of how that makes any difference to anything. Okay, that's fine. I'm not suggesting it does. I just wanted your impression. So that's about the only tribal issue I see as kind of unclear. So the case has been thoroughly briefed and argued, and the issues are complex and important, and we will take it under advice.